UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| ROBERT L. MILLS, SR., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-124-LJM-TAB |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| the Social Security Administration, | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Robert L. Mills, Sr. ("Mills"), appeals the final decision of the defendant, Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), who concluded that Mills was not entitled to Supplemental Security Income ("SSI").  The Court has considered the parties arguments and rules as follows.

## I.  BACKGROUND

### A.  PROCEDURAL HISTORY

On January 28, 2005, Mills filed an application for SSI, alleging he became disabled on January 1, 1994, due to depression, ulcers, leg numbness, headaches, and black out spells.  R. at 83-86, 115.  Mills' application was denied initially and upon reconsideration. R. at 58- 67.  On September 1, 2005, Mills filed a timely written request for a hearing, which occurred on December 13, 2007, before Administrative Law Judge Albert Velasquez (the "ALJ").  R. at 56, 20-40.  On May 30, 2008, the ALJ denied Mills' application for disability, concluding that Mills failed to demonstrate he had a severe impairment.  R. at 9-17.  Mills appealed the ALJ's decision to the Appeals Counsel, which Denied Mills' request for review

on December 4, 2008.  R. at 5-8.  Therefore, the ALJ's opinion became the final decision

of the Commissioner.  Mills seeks review of the decision in this Court pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3).


### B.  MILLS' EMPLOYMENT AND MEDICAL HISTORY

Mills was born on September 7, 1955, and was 52 years old when the ALJ rendered

his decision.  R. at 17, 83.  Mills has a ninth grade education, and from 1970-1988, he

worked as a roofer.  R. at 25, 119, 137.  In addition, he worked as a safety patrol tram

driver at a race track in May of 2001.  *Id.*  He also worked as a warehouse worker for a

manufacturing company from December 2001, to February 2002.  *Id.*

The record is somewhat limited with respect to Mills' medical history.  On March 25,

2005, Michael O'Brien, Psy.D. ("Dr. O'Brien"), examined Mills at the request of the state

agency.  R. at 174-78.  Dr. O'Brien indicated that Mills arrived on time for the examination.

R. at 1744.  Mills reported an ongoing cannabis habit and indicated that he woke up around

7 a.m., after which he watched television or relaxed the rest of the day.  R. at 175.  Mills

reported that he did not perform any chores around the house and that, as a hobby, he

enjoyed "sit[ting] around."  *Id.*  Mills stated he went "downhill" after his dad died, especially

because he was already upset about his divorce: "[E]very day I wake up and wonder what

I want to do and I can't get my head straightened out."  *Id.*  Mills denied any recent suicidal

ideation.  *Id.*  Mills reported that he was stressed, and Dr. O'Brien reported that Mills' affect

was "mildly dysphoric."  R. at 176.  Mills told Dr. O'Brien that he woke up during the night

feeling upset or lonely, and that he seldom ate food.  *Id.*  His fine motor skills were below

average based upon his penmanship on his intake paperwork, but his gross motor skills

were within normal limits.  R. at 176.  Dr. O'Brien observed that Mills did not have problems in maintaining attention or being distracted, and that he sat calmly and was cooperative during the interview.  *Id.*

Dr. O'Brien performed a mental status examination, which utilized various tasks or questions to test Mills' intellectual ability.  R. at 176-78.  For example, Dr. O'Brien asked Mills to complete certain parables when given the first portion of the parable (e.g., "Don't count your chickens . . . "), to identify the current president, and to complete a series of numbers.  R. at 176-177.  According to Dr. O'Brien, Mills' thought process seemed slower than most men his age.  R. at 177.  In addition, he noted that Mills had an above average number of errors on the mental status examination tasks.  *Id.*  According to Dr. O'Brien, Mills' above average number of errors, given his education history, "may reflect a FSIQ below 86."  *Id.*  Dr. O'Brien diagnosed cannabis abuse, bereavement, and "Rule Out Borderline Intellectual Functioning."  R. at 178.  He gave Mills a Global Assessment of Functioning ("GAF") score of 65.  *Id.*

On March 26, 2005, Dr. Ziad Issa ("Dr. Issa") examined Mills at the request of the state agency.  R. at 179-82.  Mills complained of chronic pain in both legs over the past two years, and indicated that he could not walk more than two or three blocks, climb more than one flight of stairs, squat, or lift.  R. at 179.  Mills complained of dizziness and black outs, nausea, and headaches.  *Id.*  Dr. Issa noted that Mills smoked marijuana.  *Id.*  He also noted Mills' history of leg pain, recurrent syncope,[1] and depression.  *Id.*  Dr. Issa reported that Mills was cooperative during the examination with no perceived exertional dyspnea or

---

[1] "Syncope" is defined as "[l]oss of consciousness and postural tone caused by diminished cerebral blood flow."  STEDMAN'S MEDICAL DICTIONARY 1887 (28th Ed. 1995).

difficulty getting out of a chair or on and off the examination table.  R. at 180.  In addition, Mills could stand and walk without the need for assistive measures.  *Id.*  He had normal gait and station, with no perceived difficulty walking on heels, toes, or tandem walking.  *Id.*  He squatted completely without difficulty, and had full range of motion in all of his joints without evidence of deformity, effusion, or inflammation.  *Id.*  Dr. Issa observed normal muscle tone, with no evidence of atrophy or spasm, and muscle strength of 5/5 in the upper and lower extremities.  R. at 181.  Mills had normal grip strength and fine finger manipulative abilities, including the ability to button, zip, and pick up a coin.  R. at 181.  Mills had normal sensation to light tough.  *Id.*  Dr. Issa diagnosed chronic leg pain of unclear etiology, and recurrent presyncope and syncope of unclear etiology.  *Id.*

On April 27, 2005, Dr. Unversay ("Dr. Unversay"), a state agency psychologist, reviewed the record and concluded that Mills did not have a severe mental impairment.  R. at 160-73.  On August 1, 2005, Dr. J. Larsen, another state agency psychologist,  reviewed the evidence in the file and concurred with Dr. Unversay's conclusion.  R. at 160.

In June 2005, Mills went to the hospital complaining of shortness of breath.  R. at 146.  However, X-rays of the chest showed no abnormalities.  R. at 147.  Finally, a September 5, 2007, MRI of the brain was unremarkable for any disease.

On December 13, 2007, Mills appeared with his wife and an attorney before the ALJ.  R. at 20-40.  Mills testified that he never missed work because of smoking pot.  R. at 24.  He stated that he finished only the ninth grade and struggled with math.  R. at 25.  He testified that, because both his parents were deaf mutes, he had to "search things out for [him]self."  R. at 25-26.  He stated that he recently married, but that he and his wife had known each other for nearly twenty years.  R. at 26.  They live in their own home with a pet

4

dog.  R. at 27.  Mills' wife testified that Mills is no longer using marijuana.  R. at 32-33.  Mills stated that he does not know how long an employer could count on him to work, and stated that he could not be on his feet for six hours.  R. at 36-37.  He testified that when his legs start causing problems, he feels like the circulation is lost.  R. at 37.  Mills stated that his legs ache and get heavy, and he feels like he will drop.  *Id.*  He testified that the most he could lift is a bowl or glass of milk, and that he does not go to the grocery store.  R. at 37-38.

## II.  DISABILITY AND STANDARD OF REVIEW

To be eligible for SSI, a claimant must have a disability as that term is defined in the Social Security Act.  Specifically, a disability is "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  In order to constitute a disability, the medical or physical impairment(s) must be of such severity that the individual is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).  The alleged physical or mental impairments must be supported by medically determinable evidence.  20 C.F.R. § 416.908.

In determining whether a claimant is disabled, the ALJ applies a five-step sequential evaluation process set forth by the Social Security Administration.   20 C.F.R. § 416.920(a)(4).  Specifically, the ALJ must consider and determine whether:

1.    The claimant is employed in substantial gainful activity;

2.    The claimant has a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement set forth in the regulations;

3.    The claimant has an impairment that satisfies the duration requirement and meets or equals any of those impairments listed in the regulations that automatically require a finding of disability;

4.    The claimant can still perform past relevant work given her residual functional capacity; and

5.    The claimant is unable to perform other work given her residual functional capacity, age, education, and experience.

*Id.* The burden of proof is on the claimant for the first four steps of the sequential evaluation process, and shifts to the Commissioner at the fifth and final step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992) (citing *Ray v. Bowen*, 843 F.2d 998 (7th Cir. 1988)).

The Social Security Act provides for judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 1383(c)(3). When the Appeals Council denies a claimant's timely request for review, the ALJ's decision becomes the final decision of the Commissioner. 20 C.F.R. § 416.1481; *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 1383(c)(3) (incorporating judicial review provisions of 42 U.S.C. § 405(g)); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992)). A reviewing court may not substitute its judgment for that of the ALJ, nor may it decide facts anew or reweigh evidence. *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999) (citing *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). While a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such

6

evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz*, 55 F.3d at 305 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## III. <u>DISCUSSION</u>

### A. THE ALJ'S DECISION

At step one of the five-step sequential evaluation process, the ALJ found Mills had not engaged in substantial gainful activity since January 28, 2005, the date of his application for SSI.  R. at 14.  At step two, the ALJ concluded that Mills had the following medically determinable impairments: history of chronic leg pain, recurrent presyncope and syncope of unclear origin, cannabis abuse, and r/o borderline intellectual functioning.  *Id.* However, the ALJ concluded that none of these impairments qualified as "severe," either singly or in combination with each other.  *Id.*  Therefore, the ALJ concluded that Mills was not disabled.

### B. MILLS' ARGUMENTS ON APPEAL

Mills asserts eight arguments on appeal, but most of them overlap and can be succinctly presented as one main argument.  Mills' chief complaint is that the ALJ failed to fully develop the record by not ordering additional consultative mental and physical examinations after the December 13, 2007, hearing.

A social security claimant bears the burden of supplying adequate records and evidence to prove his claim of disability.  *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004).  However, the ALJ also has a duty to ensure that the record is fully and fairly

developed, even when the claimant is represented by counsel, because disability proceedings are non-adversarial. *See Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). This may require the ALJ to order consultative medical or psychological examinations. *Id.* However, "because it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected." *Id.*

With these standards in mind, the Court concludes that the ALJ should have ordered Mills to undergo intelligence testing before issuing his decision. As stated above, the ALJ identified "r/o borderline intellectual functioning" as one of Mills' medically determinable impairments. This conclusion, of course, stems from Dr. O'Brien's March 25, 2005, consultative examination. R. at 178. In addition to questioning Mills' intellectual functioning, Dr. O'Brien noted Mills' below average scores on the mental status examination, which, given his educational background, may reflect a below average IQ. R. at 177. In his analysis of whether Mills' medically determinable impairments were severe, the ALJ stated: "[t]he examiner diagnosed [Mills] with 'rule out Borderline Intellectual Functioning.' Yet, intelligence testing was not conducted; consequently, his level of intelligence cannot be confirmed." R. at 16. Therefore, the ALJ noted the lack of intelligence testing, but still concluded that Mills' rule out borderline intellectual functioning was not severe. *Id.*

This is not a case where the claimant merely seeks just one more examination in the hopes that a new examination will rebut unfavorable prior examinations. Rather, this record has never contained intelligence testing, which could improve Mills' application for SSI under List 12.05. 20 C.F.R. Part 404, Subpart P, Appendix 1. Moreover, Mills' counsel

8

made it clear to the ALJ at the hearing that Mills' illiteracy and borderline intellectual functioning was a component of his claim for SSI.  R. at 23.  Given this representation and Dr. O'Brien's ambiguous note regarding Mills' potential IQ score, the ALJ should have acknowledged that the record before him was incomplete and ordered intelligence testing. His failure to do so was an abuse of discretion.  *See Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994) (reviewing ALJ's decision to not order additional testing under abuse of discretion standard).  Likewise, his decision, based in part upon an incomplete record, is not supported by substantial evidence.  Therefore, the Court **REMANDS** this case to allow Mills to undergo additional consultative mental examination.  Mills can pursue his remaining arguments with the ALJ on remand.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the final decision of the Commissioner of the Social Security Administration is **REMANDED**.  Final judgment shall enter accordingly.

IT IS SO ORDERED this 26th day of March, 2010.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

9